**Jack NEAL, District Attorney, 8th Judicial District, Plaintiff-Appellee,**

v.

**Honorable Kearney BRIM, Judge, 8th Judicial District, Defendant-Appellant.**

**No. 73–3769.**

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1975.

Bill M. Glaspy, Mesquite, Tex., Whitley R. Sessions, Dallas, Tex., for defendant-appellant.

Henry T. Skelton, Athens, Tex., for plaintiff-appellee.

Before WISDOM and BELL, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

On September 10, 1973, Judge Kearney Brim, a Texas state district judge, summoned the lawyers at the bar of Sulphur Springs to his court room and announced that he would convene a court of inquiry [1] on September 24 to determine whether the local district attorney, Jack Neal, had acted unlawfully

---

1. Tex.Code Crim.Proc. art. 52.01 provides that:

When a judge of any county or district court of this state, acting in his capacity as magistrate, has good cause to believe that an offense has been committed against the laws of this state, he may summon and examine any witness in relation thereto in accordance with the rules hereinafter provided.

Where a district or county judge sits as a court of inquiry, the usual rules of evidence are suspended and other procedural safeguards are superseded. At the termination of the proceedings, the judge may issue a warrant for the arrest of any alleged wrongdoer.

in the conduct of his office. Previously, Judge Brim had criticized policy decisions made by the district attorney, and the two men had frequently disagreed about the administration of justice in the Eighth Judicial District.[2] On September 20, Neal moved that Judge Brim recuse himself because of personal bias and that he ask the presiding justice of his court to appoint another judge to conduct the inquiry.[3] Judge Brim denied the motion. Neal then sought a federal injunction. After a hearing on the merits, the federal court enjoined Judge Brim from presiding at any inquiry into Neal's conduct of the district attorney's office and ordered him to request the presiding judge of his court to appoint another judge to conduct the court of inquiry in his stead.

Judge Brim challenges the propriety of this injunction on several grounds. First, he alleges that the federal court does not have jurisdiction because Neal's complaint does not state a constitutional claim. He also argues that no "special circumstances" justify the granting of an injunction and that there was insufficient evidence that Neal would be deprived of his constitutional rights because of Judge Brim's personal bias. Although we find that the federal court has jurisdiction over Jack Neal's claim, we need not reach the other issues Judge Brim sets forth because we hold that the federal court should have abstained from deciding the federal constitutional issues until the Texas courts have determined Neal's rights under Texas law.

## I.

At the threshold, we must determine whether Jack Neal's federal complaint states a cause of action under 42 U.S.C. § 1983 [4] and whether the federal courts have jurisdiction under 28 U.S.C.

---

2. At the proceeding on September 10, 1973, Judge Brim made two allegations relating to Neal's misconduct in office. First, he accused Neal of failing to prepare indictments to present to grand juries. Second, he accused Neal of various conflicts of interest because of his having filed civil suits arising out of transactions that also constituted violations of the criminal law that he was under a duty to prosecute as district attorney.

Apart from the allegations Judge Brim made at the meeting of the Sulphur Springs bar on September 10, there is strong evidence of animosity between the two men. Although Judge Brim was apparently instrumental in securing the District Attorney's position for Jack Neal, the two men soon became enemies. District Attorney Neal maintains that Judge Brim, as a private attorney, attempted to use his personal influence to have him dismiss a criminal case in which Brim represented the defendant. Neal refused to dismiss the case. Thereafter, Brim was appointed district judge and allegedly began a campaign of harassment and intimidation of the district attorney. Judge Brim accused the chief probation officer, with whom Neal had developed a close working relationship, of misuse of funds and discharged him in open court. He intervened with the county commissioners to alter an arrangement that provided Neal with private office space because of inadequate office space in the courthouse. Judge Brim convened a grand jury on several occasions without notifying Mr. Neal. He ordered Neal's arrest on one occasion when he held him in contempt for failure to prosecute a client's civil case. Numerous other instances of animosity were presented at trial.

3. At no time has Neal challenged the constitutionality or propriety of a court of inquiry. Both in his motion in Judge Brim's court and in his pleadings in federal court, he has asked only that another judge be named to conduct the court of inquiry. He has maintained steadfastly that he is willing to submit to a court of inquiry as provided by Texas law so long as it is conducted by an impartial judge.

4. 42 U.S.C. § 1983 provides that:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

§ 1343.[5] To state a claim under Section 1983, a plaintiff must allege some deprivation of federal constitutional or legal rights accomplished under color of state law. Neal alleges that he would be deprived of due process if Judge Brim is not disqualified from presiding at this court of inquiry, because an essential element of due process is the right to be heard by an impartial judge. Johnson v. Mississippi, 1971, 403 U.S. 212, 91 S.Ct. 1778, 29 L. Ed.2d 423. The trial court found, as a matter of fact, that "[t]he evidence indisputably discloses much animosity existing between" Brim and Neal and that Judge Brim "harbors much ill will, bias and prejudice against plaintiff as a result of personal and professional disagreements" in regard to Neal's conduct of his office. In light of the ample evidence of animosity that was adduced at trial, we hold that the trial court's findings of fact were not clearly erroneous. Fed.R.Civ.P. 52. Indeed, the record clearly shows that Judge Brim was prejudiced against Mr. Neal.

The question Judge Brim puts to us concerns the legal effect to be given this finding of animosity. The Supreme Court has said that due process is offended if a judge participates in a case when he is "so enmeshed in matters involving petitioner as to make it *appropriate* for another judge to sit". Johnson v. Mississippi, 1971, 403 U.S. 212, 215–216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (emphasis supplied). Judge Brim concedes that the tempestuous history of his relations with Jack Neal would preclude his sitting as a judge in any criminal trial in which Jack Neal is a defendant. He contends, however, that a court of inquiry is a purely investigatory proceeding wherein the district or county judge sits only in the role of magistrate and not as a judge. Therefore, Judge Brim argues, an unbiased judge may be desirable in this context, but such a judge is not required as a matter of due process. Whatever the final merit of Judge Brim's argument, we need say only that it is not helpful for purposes of establishing whether the federal courts have jurisdiction.

In determining whether the federal courts have jurisdiction over the civil rights claim stated in Jack Neal's complaint, we must decide whether those allegations are wholly insubstantial or frivolous. See Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, cf. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350, p. 556. We need not decide the merits of the constitutional issues Neal raises in order to determine that they are not wholly insubstantial or frivolous. We hold, therefore, that the federal courts have jurisdiction in this case.

The next issue we face is whether this case is an appropriate one for application of the abstention principle.

## II.

Although the federal courts have a duty to respect a party's choice of a federal forum for the determination of federal issues, a federal court, in certain extraordinary and limited circumstances, may postpone its decision in order to avoid premature and perhaps unnecessary decision of a serious federal question or to avoid the hazard of unsettling some delicate balance in the area of state-federal relations. See Louisiana Power & Light Co. v. Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058. "Numerous decisions . . . have sanctioned abstention from deciding cases involving a federal constitu-

---

5. In relevant part, 28 U.S.C. § 1343 provides that:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

tional issue when a state court determination of state law might moot the issue or put the case in a different posture". 360 U.S. 25, 32–33, 79 S.Ct. 1070, 1075, 3 L.Ed.2d 1058. Apart from the desirability of not reaching unnecessary federal questions, however, federal courts must be sensitive to a state's special interest in expounding its own law and supervising its own judiciary. The other side of the coin is, of course, that abstention may lead to unnecessary delay, waste, and expense to litigants that may emasculate federal protection of federal rights. England v. Louisiana Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. See also Harrison v. N. A. A. C. P., 1959, 360 U. S. 167, 180, 79 S.Ct. 1025, 3 L.Ed.2d 1152. These countervailing considerations demonstrate that the abstention decision must be grounded in the circumstances of a particular case.[6]

█ The case at bar turns on an unsettled question of Texas law that is important both because its solution may make any determination of Neal's federal constitutional claim unnecessary and because it goes directly to the state's interest in enforcing the integrity of the Texas judicial process. That issue of Texas law is whether Judge Brim's personal relationship with Jack Neal should disqualify him from hearing the case and whether Neal has any effective means for enforcing such a disqualification if it exists. For his part, Neal maintains that Texas law recognizes only four grounds for disqualification of judges: (1) relationship by affinity with either party within the third degree; (2) relationship by consanguinity with either party within the third degree; (3) prior attorney-client relationship with either party; and (4) pecuniary interest in the case. He extracts these categories from various provisions

of Texas law. See Vernon's Ann.St. Tex.Const. art. V, § 11; Vernon's Tex. Rev.Civ.Stat.Ann. art. 15 (1969); Vernon's Ann.Tex.Code Crim.Proc. art. 30.-01 (1966). Moreover, he argues that these grounds are exclusive and state all the circumstances that forbid a judge to sit in a case. Williams v. State, 492 S. W.2d 522, 524 (Tex.Cr.App.1973).

Judge Brim, on the other hand, calls to our attention the Code of Judicial Conduct promulgated by the Supreme Court of Texas on July 25, 1974. Under this new Code of Judicial Conduct, which construes the same Texas law that Neal cites as authority, the Supreme Court states that "[a] judge should disqualify himself in a proceeding in which *his impartiality might reasonably be questioned,* including, but not limited to, instances where: (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding". Tex.Code of Judicial Conduct, Canon 3, Section C(1) (emphasis added). Not only does the new code appear to extend the ground for disqualification of judges, but its expansive definition of "judge" would also seem to encompass judicial personnel serving as courts of inquiry as well as in more traditionally judicial roles:

> Anyone, whether or not a lawyer, who is performing judicial functions, including an office such as a special master, court commissioner, or magistrate, is a judge for the purpose of this Code.

Tex.Code of Judicial Conduct, Section on Compliance with The Code. In arguing that his personal prejudice does not offend due process as guaranteed by the United States Constitution, Judge Brim has argued that a judge sitting as a court of inquiry under Texas law is serving the function of a magistrate.

---

6. Cf. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; M. Field, Abstention In Constitutional Cases: The Scope of The Pullman Abstention Doctrine, 122 U.Pa.L.Rev.

1071 (1974); H. Friendly, Federal Jurisdiction: A General View 101–102 (1973); C. Wright, Handbook of the Law of Federal Courts § 52 (1970).

Thus he would seem to be covered by the language of the Texas Judicial Code.[7]

■ The Supreme Court of Texas has statutory authority to issue extraordinary writs against any district judge. Tex.Rev.Civ.Stat.Ann. art. 1733. If Judge Brim is disqualified by Texas law from conducting this court of inquiry, the Texas Supreme Court has the authority to issue an extraordinary writ and require that a different judge conduct the investigation. At the same time, abstention by the federal courts would not require Neal to litigate his federal claims in the state courts; although he must inform the state courts regarding the nature of his federal claims, he may preserve them for federal adjudication if he desires to do so. England v. Louisiana Medical Examiners, 1964, 375 U.S. 411, 420, 84 S.Ct. 461, 11 L.Ed.2d 440. Given the state's interest in maintaining the fairness and integrity of its own judicial process, we think that the Texas courts ought to have the first opportunity to resolve these important issues of state law.

We think that the appropriate procedure here is for the federal district court to dissolve its injunction. District Attorney Neal should then proceed in the Texas courts. If he is unable to secure relief there and reserves the federal issues for federal determination under the rule established in *England*, he will be able to renew his action in the district court.

The decision of the district court is reversed and remanded, subject to the limitations expressed in this opinion and without prejudice to the plaintiff's right to reassert his federal claims to relief should he be denied effective relief by the Texas courts.

7. In arguing for abstention, Judge Brim seems to us to have taken a position that is at least partially inconsistent with his steadfast refusal to recuse himself. The plain language of the Judicial Code applies to persons serving as magistrates and it requires them to disqualify themselves when their "impartiality might reasonably be questioned". In his supplemental brief, Judge Brim asserts that "[a]s the Code of Judicial

Conduct is an order of the Supreme Court, and is binding on Judge Kearney Brim, this court should not presume that Judge Kearney Brim would not follow the orders of the Supreme Court of Texas." In view of this language of the Code of Judicial Conduct, we wonder why this controversy continues to exist: Judge Brim should have followed his own precepts.