Robert F. CRAWFORD,
Plaintiff,

v.

H. B. SHORT et al., Defendants.

Civ. A. No. 71-H-1370.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 15, 1975.

Peter D. Williamson, Houston, Tex., for plaintiff.

Jonathan Day, City Atty., Alan F. Levin, Sr. Asst. City Atty., Dennis C. Gardner, Asst. City Atty., Houston, Tex., for defendants H. B. Short, H. S. Lanier and H. McGill.

Paul P. Regnier, Houston, Tex., for defendant Floyd E. McDonald.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

On Tuesday, January 13, 1975, the Court conducted a pretrial conference in Chambers on the eve of the scheduled commencement of the trial of this cause. Attorneys were present representing all parties. The following ruling is issued in response to the threshold jurisdictional and abstention questions raised during that conference. To avoid confusion, the Court notes preliminarily that after a prior ruling by this Court and an agreement between the parties which removed the City of Houston and former Mayor Louie Welch as parties to this suit, the proper style of this case should now be Crawford v. Short et al.

For the reasons stated herein, the Court concludes that jurisdiction is proper in this Court under 42 U.S.C. §§

1983 and 1985, and 28 U.S.C. § 1343(3). The Court further concludes that invocation of the abstention doctrine is appropriate. Accordingly, the case will be dismissed without prejudice to its reinstatement with any applicable statute of limitations tolled until the state courts of Texas are given the opportunity to decide those matters whose resolution would have a direct bearing on the propriety of this federal action. Plaintiff may move to reinstate this suit should he be denied effective relief by the courts of Texas.

## I. NATURE OF THE CASE

For purposes of the record, the Court recites pertinent facts gleaned from the pleadings and the pretrial order, and amplified by the representations of counsel during the pretrial conference.

Plaintiff was initially employed by the City of Houston Police Department in the Police Crime Laboratory in 1955. He is currently on indefinite suspension from his position as Assistant Chemist and Toxicologist. This suit is brought by him because of an adverse temporary work suspension assessed in 1971, and because of an alleged general decline in performance ratings of his work as assessed periodically from August, 1970, until this suit was filed in November, 1971, for which indefinite suspension allegedly was imposed in January, 1972.

The defendants in this action are the director of the municipal civil service department (Lanier), the (former) chief of police (Short), the Inspector of the Houston Police Department in charge of the Bureau of Technical Services (McGill), and the Director of the Houston Police Department Crime Laboratory (McDonald). The City of Houston was dismissed as a party by order of this Court pursuant to the holding of the United States Supreme Court in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The former Mayor of the City, Louie Welch, has been dismissed as a party by stipulation of counsel.

In March, 1970, plaintiff, in his role as an expert witness for the State, testified in a state criminal trial about the effects of marijuana on the body, stating his belief that marijuana was no more harmful than "coke or alcohol" and should not be classified under the law as a narcotic drug. Within six weeks thereafter, plaintiff was questioned about his testimony by defendant McDonald. Upon learning of plaintiff's views about marijuana, McDonald did not thereafter regularly assign marijuana cases to plaintiff. This decision to re-orient job assignments was sustained by McDonald's supervisor, defendant McGill.

Over a period of several months after reassignment, plaintiff became aware that he was receiving steadily declining performance ratings. A fundamental contention of plaintiff in this suit is that such decline in ratings was caused by the philosophical conflict between plaintiff and his supervisors concerning his expressed views on the effects of marijuana on the body.

Plaintiff's second general cause arises from a series of events beginning on August 30, 1971. Prior to that time, police lab chemists such as plaintiff were permitted to perform analyses on outside sources of chemical drugs as a source of extra income if such analyses were performed after hours. Plaintiff had performed such analyses at the police laboratory. On August 30, an oral directive was communicated to plaintiff by defendants McGill and McDonald, his two immediate supervisors, prohibiting all police chemists from performing outside chemical analyses at the police laboratory. Though communicated orally to plaintiff, the policy was intended to have staff-wide effect.

Whether because of misunderstanding, mistake, deceit or design, plaintiff allegedly violated this directive on September 24, 1971, and was temporarily suspended for 15 working days, effective September 27, 1971. Pursuant to statute, plaintiff sought a review of this tempo-

rary suspension on October 1, 1971. While the appropriate statute, Vernon's Tex.Rev.Civ.Stat.Ann. art. 1269m, § 20, does not so provide, a hearing was conducted by the Civil Service Commission (Commission), the body responsible for reviewing the suspension. Plaintiff did not testify at this hearing, although he was allegedly invited to attend. On October 22, 1971, plaintiff was notified that the suspension had been reviewed and would be sustained. The assessed penalty of 15 working days was upheld. The parties have stipulated that plaintiff's lost salary during this period was $864.75.

Alleging violation of due process and First Amendment rights, plaintiff filed this action on November 30, 1971. Subsequently, plaintiff was indefinitely suspended on January 10, 1972. This suspension was overturned, and on April 1, 1973, plaintiff was reinstated to his job at full pay and awarded full back pay for the period of his suspension by order of the Texas Court of Civil Appeals. See Crawford v. City of Houston, 487 S.W. 2d 179 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). Within six weeks of his return to work, plaintiff was indefinitely suspended again, on approximately May 15, 1973. After the Commission upheld this suspension, plaintiff filed suit in state court pursuant to statute. See Tex.Rev.Civ.Stat. Ann. art. 1269m, §§ 16 and 18. Plaintiff acknowledges that if he prevails in the pending state court suit as to the indefinite suspension, he would be made "whole" for purposes of lost back pay, rescinded pension benefits, reinstatement and seniority. There is currently no pending action in state court as to the temporary suspension.

## II. JURISDICTION

This Court previously determined on June 26, 1974, that jurisdiction was proper in this Court under 42 U.S.C. §§ 1983 and 1985, and 28 U.S.C. § 1343(3), and that the motion of defendants to dismiss the complaint for failure to state a claim would be denied. At the recent pretrial conference defendants again raised the spectre of jurisdictional defects in this suit.

Allegations of jurisdictional defects invoke salient considerations of this Court's authority. Therefore, even though this Court has once rejected defendants' contentions on jurisdictional defects, the Court has carefully reviewed again defendants' arguments and supporting authorities, as well as the authorities supplied by plaintiff in opposition. After thorough consideration, the Court again concludes that jurisdiction is proper in this Court and that plaintiff's complaint does state causes of action upon which relief can be granted, involving not insubstantial questions of federal law.

The Court will not reiterate all of the reasons upon which it relied in its June 26, 1974, order. See Order of the Court at 4–10 (June 26, 1974). Rather, this Court will highlight certain of the reasons supporting its jurisdictional base.

Public employers or their agents are clothed with the responsibility for public affairs which attaches to their actions the color of state involvement for purposes of the Civil Rights laws and the Fourteenth Amendment. Discretionary exercise of supervisory authority by the public employer to assign various employees to narrowly-defined job tasks does not ordinarily invoke evaluation by constitutional standards. However, alleged punishment of a public employee by dismissal or other penalty for his expression of views protected by the First Amendment under the guise of job reassignment does elevate public employment relations to a constitutional plane. In this regard, two cases cited by defendants, Keys v. Sawyer, 353 F.Supp. 936 (S.D.Tex.1973), and Egner v. Texas City Independent School District, 338 F.Supp. 931 (S.D. Tex.1972), are inapposite to the instant case because alleged violation of a public employee's civil rights was not raised in those cases.

[3] As defendants contended at the pretrial conference and as was recognized by this Court in its June 26 Order, a balance must be struck between the interests of the employee, as a citizen and a professional, in commenting on matters of public service and the interests of the State, as an employer, in promoting efficiency of the public services it performs through its employees. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, the Supreme Court in *Pickering* went on to note that grounds for dismissal are not furnished when comments on matters of public concern are expressed which are substantially correct. 391 U.S. at 570, 88 S.Ct. 1731. Even when expressions are uttered concerning matters wherein the truth remains in doubt, state action which has an inhibitory effect on a public employee's right of expression and is provoked because of that expression is not justified when those interests of the individual state agents are sought to be equated with the public interests. 391 U.S. at 571, 88 S.Ct. 1731.

■ In this case, the truth or falsity of plaintiff's views on the effects of marijuana on the body cannot be finally determined. Regardless of the correctness of plaintiff's position, the First Amendment guarantees that he cannot be dismissed or otherwise penalized for expressing protected views, and allegations of such penalties imposed as a consequence thereof are cognizable by federal courts.

■■ Turning now to a jurisdictional consideration of plaintiff's hearing on the temporary suspension, considerations of due process attach when the state endeavors to provide certain benefits but does not accompany them with appropriate procedural safeguards. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); McDowell v. State of Texas, 465 F.2d 1342 (5th Cir. 1972) (Brown, J., concurring) (en banc), cert. denied, 410 U.S. 943, 93 S.Ct. 1371, 35 L.Ed.2d 610 (1973). Thus, jurisdiction and proper claims are stated in plaintiff's complaint as much as they were in other public employee cases. *See, e. g.,* Miller v. Hulsey, 356 F.Supp. 739 (E.D.Ark.1973); Boulware v. Battaglia, 327 F.Supp. 368 (D.Del.1971); Flynn v. Giarrusso, 321 F.Supp. 1295 (E.D.La.1971); Bruns v. Pomerleau, 319 F.Supp. 58 (D.Md.1970); *Cf.* Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970). Failure to utilize available state administrative or judicial remedies has no jurisdictional consequence in federal suits filed under 42 U.S.C. § 1983.

## III. APPLICABILITY OF THE ABSTENTION DOCTRINE

■ ■ With jurisdiction properly vested in this Court, a consideration of pretrial procedural matters would ordinarily be appropriate. However, in this particular case, the presence of certain factors mandates that the appropriateness of invoking the abstention doctrine be scrutinized. That is, while delving into the many facts alleged in this case, the Court became aware only shortly before trial of certain alternative relief available to plaintiff, and of the magnitude of certain questions presented which involve unresolved Texas statutory questions. In the instant case, the Court concludes that abstention is appropriately invoked.

### A. State Review of the Indefinite Suspension

Plaintiff alleges First Amendment violations in reaction to his March, 1970, testimony about marijuana. Plaintiff has contended that he was injured by virtue of this reaction to the extent that lower performance ratings were assessed against him between April, 1970, and November, 1971. He further contends that ample proof of injury is available because, subsequently, he was indefinitely suspended.

As has been noted previously, however, plaintiff can be made "whole" regarding the alleged injuries that culminated in indefinite suspension through favorable judicial review in the state courts of Texas. Such total recovery

has previously been realized by plaintiff, if only for a brief period. On November 1, 1972, the Texas Court of Civil Appeals for the Fourteenth District in Houston overturned the Commission's approval of plaintiff's January, 1972, indefinite suspension. The appellate court based its holding on the failure of the Commission to hold a hearing within thirty (30) days after plaintiff requested review of his suspension, in strict compliance with Article 1269m, § 16. With the Commission's findings invalidated, the "automatic" reinstatement provisions of section 16 were activated. Plaintiff was therefore reinstated on or about April 1, 1973, to his former position at his previous salary, with back pay and full seniority awarded to update his employment status to the appropriate level at the time of reinstatement.

In the state suit now pending, which is eligible to be preferentially set by the district court pursuant to section 18 of Article 1269m, a favorable judicial review pursuant to sections 16 and 18 of Article 1269m would nullify plaintiff's current indefinite suspension in a decree awarding him the full panoply of relief he seeks in this Court without reaching any federal constitutional question.

### B. State Review of the Temporary Suspension

Plaintiff alleges due process violations arising out of the issuance of the August 30 directive on working on outside sample analyses and his subsequent temporary suspension on September 27, 1971, for alleged violations of this directive. Plaintiff has contended that though not required to do so under section 20 of Article 1269m, the Commission agreed to hold a hearing to investigate plaintiff's temporary suspension. Due process was denied, according to plaintiff, because he was not permitted to present evidence at this hearing or to cross-examine other witnesses to demonstrate the alleged flimsiness of the charges against him. Additionally, plaintiff alleges injury for the imposi-

tion of an excessive suspension—15 "working" days instead of 15 "calendar" days.

Section 20 of Article 1269m, the operative statute for imposition and investigation of suspensions for 15 days or less, has been upheld as constitutional in an "across-the-board" attack on Article 1269m. Fire Department of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664 (1949). However, plaintiff does not here challenge the constitutionality of section 20, but only its investigatory and "15-day" provisions. He contends that because the Commission provided a hearing not required by the statute, the hearing must comport with federal due process. Plaintiff also contests the Commission's interpretation of "15 days" to mean 15 "working" days.

The proper interpretation of "15 days" in section 20 has never been presented to a Texas court, nor has a Texas court been given the opportunity to adjudicate the authority of the Commission to provide a hearing on an "ad hoc" basis during a section 20 investigation, the precedential effect that providing a hearing may have on future Commission investigations of section 20 suspensions, and the degree to which such an extension of section 20 review must, or does, comport with the state constitution. Judicial review, pursuant to section 18, is not presently applicable to section 20, and plaintiff currently has no suit pending to challenge the temporary suspension.

However, even without specific review provided, plaintiff would have access to state court through the remedy of mandamus. See Wortham v. City of Amarillo, 493 S.W.2d 597, 598 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). It must also be recognized that review by this Court of the Commission's decision to uphold plaintiff's temporary suspension in this case would effectively establish this Court as a direct appellate body above the Commission, all of whose members are not parties to this suit.

## C. Principles of Abstention

The doctrine of abstention has developed in different ways in a variety of fact situations. Whatever its precise meaning or application, there can be no question of its availability under certain circumstances where federal and state courts have concurrent jurisdiction. *See, e. g.,* Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). Two of the goals for which use of the doctrine was originated can be promoted by invocation of abstention in this case: avoiding premature and perhaps unnecessary decision of serious federal questions raised by the indefinite suspension where the case may be fully disposed of by a state court on questions of state law; and leaving to the state the resolution of unsettled questions of state law raised by the temporary suspension. Additionally, abstention in this case would permit this Court to avoid needless conflict with the administration by Texas of its own affairs. *See generally* Wright, Law of Federal Courts § 52 (1970 ed.).

The United States Court of Appeals for the Fifth Circuit has very recently addressed the propriety of abstention in § 1983 suits in the case of Neal v. Brim, 506 F.2d 6 (1975). *Neal* involved a civil rights suit brought under § 1983 by a district attorney against a judge, alleging that the judge was prejudiced against the attorney and should be involuntarily recused pursuant to statute from sitting in trials to be prosecuted by the district attorney. The Fifth Circuit reversed a judgment which had been entered in plaintiff's favor.

Finding that the federal court had jurisdiction over the cause since the civil rights claim did not allege wholly insubstantial or frivolous claims, the appellate court went on to hold that abstention was appropriate. The case turned on an unsettled question of Texas law, and the Fifth Circuit, being sensitive to the state's special interest in expounding its own law and supervising its own judiciary, was especially interested in permitting the state to have the first opportunity to resolve important issues of state law, even though no state suit was then pending.[1]

Plaintiff's active litigation of the pending state court suit over his indefinite suspension could result in a decree providing relief that would completely subsume the not insubstantial federal questions raised on First Amendment grounds in the instant case. Pursuit of appropriate state court review of the circumstances of the Commission's review and decision on plaintiff's temporary suspension would provide the State of Texas the first opportunity to decide significant questions of state law regarding administration and regulation of state fire and police civil service departments and personnel.

Therefore, this Court abstains from further action at this time and dismisses this suit without prejudice to its reinstitution should plaintiff be denied effective relief by the courts of Texas.

---

[1]. Since this opinion was rendered, the Supreme Court has issued a decision in which the abstention doctrine is discussed. *See* Harris County Commissioners Court v. Moore, —— U.S. ——, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). The *Moore* Court extensively illustrates the standards to be applied in determining *the propriety of abstention in cases involving* constitutional questions. These standards substantially coincide with the standards delineated in Neal v. Brim, *supra*, upon which this Court relied.