

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00152-CV
_____

JOE ADAM RAMIREZ AND FREDERICK Q. HERROD, APPELLANTS

V.

RISSIE OWENS AND TEXAS BOARD OF PARDONS AND PAROLES, APPELLEES

_____

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-14-004398, Honorable Orlinda Naranjo, Presiding

_____

November 19, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellants, Joe Adam Ramirez and Frederick Q. Herrod, inmates proceeding *pro se* and *in forma pauperis*, appeal from an order dismissing their lawsuit against Rissie Owens and the Texas Board of Pardons and Paroles (collectively referred to as TBPP). They sued to recover declaratory, equitable and monetary relief related to the failure of the TBPP to 1) enact policies in accordance with Texas Government Code § 508.144 and 2) afford them due process *viz* their purported "defeasible liberty interest" in parole. That "defeasible liberty interest" was allegedly created by policies of the TBPP enacted per § 508.144. The TBPP moved to dismiss the suit under Texas Rule of Civil

Procedure 91a.1.[1]  The motion was granted, which decision resulted in this appeal.[2]  We affirm.

Per 91a.1, an action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.  TEX. R. CIV. P. 91a.1.  In turn, it has no basis in fact if no reasonable person could believe the facts pleaded.  *Id.*  And, because the trial court may not consider evidence in deciding the motion and must solely base its decision on the pleadings of the cause of action coupled with exhibits attached thereto, TEX. R. CIV. P. 91a.6, our review is also limited to consideration of the pleadings and exhibits attached thereto.  Nonetheless, we construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations (if any) stated therein to determine if the cause of action has a basis in law or fact.  *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet denied).  We also apply the fair notice pleading standard applicable in Texas to determine whether the allegations of the petition are sufficient to allege a cause of action.  *Id.*

We further note that an appellant's burden on appeal is to illustrate that the trial court erred in ruling as it did.  *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980).  Logically then, Ramirez and Herrod were obligated to show that their various claims

---

[1] Texas Rule of Civil Procedure 91a permits the dismissal of a lawsuit on the grounds that it has no basis in law or fact.  TEX. R. CIV. P. 91a.1.  However, it specifies that it is not applicable to actions brought under the Family Code or "a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code."  *Id.*  The latter encompasses civil actions initiated by prisoners who seek to prosecute their suit as paupers. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002 (West Supp. 2015).  Ramirez and Herrod fell within that category.  So, the TBPP could not invoke, nor could the trial court utilize Rule 91a to dismiss the action.  Yet, because we cannot consider unassigned error, *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998), and no one complains of this defect, we cannot rely on it to reverse the dismissal order.

[2] Whether a cause of action has any basis in law or fact is a decision we review *de novo*.  *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet denied).

involved facts that a reasonable person could believe and the law entitled them to the relief sought. That was not done.

We initially observe that the live pleading of Ramirez and Herrod (that is, their first amended complaint) states no facts but merely conclusions to support their causes of action. This deficiency is of import since their allegations are founded upon conduct or policies undertaken by the TBPP which they characterize as unlawful or unconstitutional. Yet, any type of factual description of that conduct or of those policies appears nowhere in the amended complaint.

Second, their suit involves the matter of parole, their purported liberty interest to it, and the TBPP's alleged non-compliance with § 508.144 of the Government Code. Though alleging that the policies of the TBPP vested them with a "defeasible liberty interest" in release from prison, they fail to explain what they mean by a "defeasible liberty interest." And, as alluded to above, their pleadings do not describe the policies in question or how those policies created a purported liberty interest. *See Alford v. Dallas*, 738 S.W.2d 312, 316-17 (Tex. App.—Dallas 1987, no writ) (stating that a property interest protected by procedural due process arises where an individual has a legitimate claim of entitlement that is created, supported or secured by rules or mutually explicit understandings). This omission is fatal because courts have uniformly rejected the arguments that inmates have a liberty interest in parole and the TBPP's policies create such an interest. *Johnson v. Rodriguez,* 110 F.3d 299, 305 (5th Cir. 1997); *Gonzales v. Tex. Bd. Of Pardons & Paroles*, No. A-12-CA-1000-SS, 2012 U.S. Dist. LEXIS 158108, at *10 (W.D. Tex. Nov. 5, 2012) (stating that "[b]ecause Texas inmates have no protected liberty interest in parole, they cannot have a liberty interest in parole

3

consideration or other aspects of parole procedures"); *Martin v. State Board of Criminal Justice*, 60 S.W.3d 226, 230 (Tex. App.—Corpus Christi 2001) (*citing Allison v. Kyle*, 66 F.3d, 71, 74 (5th Cir. 1995) (stating that there is no liberty interest in parole created by Texas law that is protected by due process and that an inmate cannot attack the constitutionality of procedural devices attendant to parole decisions because he has no liberty interest in obtaining parole).  So, it was incumbent upon Ramirez and Herrod to describe to us why the foregoing authority no longer applied or in what way changes to the law or procedures breathed life into their claims, especially since their live pleadings, and reasonable inferences therefrom, fail to indicate such changes.[3]

Much the same applies to the allegation that the procedures enacted by the TBPP somehow violated the "separation of powers when adopting policies that override and or amend[ed]" sections 508.1411 and 508.144 of the Government Code.[4]

---

[3] While it may be that Ramirez and Herrod informed the trial court, at the hearing upon the TBPP's motion to dismiss, of various procedures which allegedly were not followed when engaging in the parole calculus, Rule 91a.6 prohibits our consideration of same.  Again, only the pleadings and exhibits may be considered under that rule, not any evidence which may have been proffered at the hearing.  TEX. R. CIV. P. ANN. 91a.6.  This limitation also serves to address the argument that the trial court should have acquired a copy of the TBPP's policies before it granted the motion to dismiss.  First, Ramirez and Herrod cite no authority supporting the proposition, and the authority it did cite, *i.e., Cire v. Cummings*, 134 S.W.3d 835 (Tex. 2004), dealt with sanctions for discovery abuse, not Rule 91a.  But, more importantly, the trial court was restricted to perusing only the pleadings and exhibits thereto.  If the policies were not described in or attached as an exhibit to the pleadings, then they were beyond consideration.

[4] The "separation of powers" alluded to by the appellants is found in article II, § 1 of the Texas Constitution.  The provision states that:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

According to the former:

a)  For each decision of a parole panel granting or denying the release of an inmate on parole, or denying the release of an inmate on mandatory supervision, the parole panel shall:

(1)  produce a written statement, in clear and understandable language, that explains:

(A)  the decision; and

(B)  the reasons for the decision only to the extent those reasons relate specifically to the inmate;

(2)  provide a copy of the statement to the inmate; and

(3)  place a copy of the statement in the inmate's file.

(b)  In a written statement produced under Subsection (a), the parole panel may withhold information that:

(1)  is confidential and not subject to public disclosure under Chapter 552; or

(2)  the parole panel considers to possibly jeopardize the health or safety of any individual.

(c)  The board shall keep a copy of each statement produced under Subsection (a) in a central location.

Tex. Gov't. Code Ann. § 508.1411(a)-(c) (West Supp. 2015).  In turn, § 508.144 states that:

(a)  The [TBPP] board shall:

(1)  develop according to an acceptable research method the parole guidelines that are the basic criteria on which a parole decision is made;

(2)  base the guidelines on the seriousness of the offense and the likelihood of a favorable parole outcome;

(3)  ensure that the guidelines require consideration of an inmate's progress in any programs in which the inmate participated during the inmate's term of confinement;

(4)  establish and maintain a range of recommended parole approval rates for each category or score within the guidelines; and

(5)  implement the guidelines.

(b)   The board shall meet annually to review and discuss the parole guidelines and range of recommended parole approval rates.  The board may consult outside experts to assist with the review.  The board shall prioritize the use of outside experts, technical assistance, and training in taking any action under Subsection (c).  The board must consider:

(1)  how the parole guidelines and range of recommended parole approval rates serve the needs of parole decision-making; and

(2)  the extent to which the parole guidelines and range of recommended parole approval rates reflect parole panel decisions and predict successful parole outcomes.

(c)  Based on the board's review under Subsection (b), the board may:

(1)  update the guidelines by:

(A)  including new risk factors; or

(B)  changing the values of offense severity or risk factor scores; or

(2)   modify the range of recommended parole approval rates under the guidelines, if parole approval rates differ significantly from the range of recommended parole approval rates.

(d)   The board is not required to hold an open meeting to review the parole guidelines and range of recommended parole approval rates as required by Subsection (b), but any modifications or updates to the guidelines or range of recommended parole approval rates made by the board under Subsection (c) must occur in an open meeting.

*Id.* at § 508.144(a)-(d).  How the TBPP policies transgress either of the foregoing statutes went undescribed in the live pleadings of Ramirez and Herrod.  Indeed, no purported transgression can be divined without a copy of the policies, and, again, they were not included in those live pleadings.

Since the separation of powers doctrine prohibits one branch of the state government from exercising power inherently belonging to another branch, *General Servs. Comm. v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001), and the legislature may properly delegate to an administrative agency the authority to establish

6

rules and regulations reasonably carrying out the expressed purpose of a statute, *Oxford v. Hill*, 558 S.W.2d 557, 560 (Tex. Civ. App.—Austin 1977, writ ref'd), Ramirez and Herrod had to explain to us how the TBPP violated these edicts by enacting the unknown policies in question. They did not either in their brief or their live pleading. So, we cannot say that they satisfied their obligation to show that the trial court erred in concluding that the claim lacked basis in law and fact under Rule 91a.

The issues posed to us are overruled, and the judgment of the trial court is affirmed.

Brian Quinn
Chief Justice